UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AVIS J. SMITH, *pro se*,

                  Plaintiff,

                 -against-

XLIBRIS PUBLISHING, PENGUIN, and
RANDOM HOUSE,

                  Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-cv-5334 (DLI)(RER)

**DORA L. IRIZARRY, Chief Judge:**

On September 15, 2015, plaintiff Alvin J. Smith ("Plaintiff"), proceeding *pro se*,[1] filed the instant action against Xlibris LLC ("Xlibris") and Penguin Random House LLC ("Penguin Random House," and together with Xlibris, "Defendants")[2] alleging, *inter alia*, that Defendants had failed to comply with an agreement executed by the parties for certain self-publishing services. (Compl., Dkt. Entry No. 1.) After Plaintiff filed an amended complaint on November 30, 2015 (Am. Compl, Dkt. Entry No. 9), Defendants sought leave to file the present motion to compel arbitration of all claims brought by Plaintiff and to stay further litigation of the claims pending arbitration (Dkt. Entry No. 11). After leave was granted, Defendants served their motion (Mot. to Compel Arbitration ("Motion to Compel" or "Def. Mot."), Dkt. Entry No. 22), and Plaintiff opposed (Pl. Opp. to Def. Mot. to Compel Arbitration ("Plaintiff's Opposition" or "Pl. Opp."),

---

[1]     In reviewing the petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

[2]     Although Plaintiff's caption named "Xlibris Publishing, Penguin and Random House" as defendants, the Declaration of Melissa Bauer, the General Counsel for Author Solutions LLC, indicates that Penguin and Random House are one corporate entity called "Penguin Random House LLC." (*See* Dkt. Entry No. 22-1 at 1.) Penguin Random House LLC, in turn, was the parent company of Author Solutions LLC until December 31, 2015, when it was sold. (*Id.*) The declaration describes Author Solutions LLC as an indirect corporate parent of Xlibris. (*Id.*)

Dkt. Entry No. 23). For the reasons set forth below, Defendants' Motion to Compel is granted and this action is closed without prejudice to it being reopened at the conclusion of the arbitration.

## BACKGROUND

Xlibris provides self-publishing services to authors who wish to self-publish their work, and offers, through its website, a variety of publishing packages to facilitate editing, publishing and marketing. Plaintiff, having previously submitted his manuscript to Xlibris, received an email on December 11, 2014, from a publishing consultant at the company stating:

> We believe in your work Mr. Smith, we took a little time reviewing the matter because it is quite sensitive. But we can do it, and with the programs that we've laid out for you it should provide the book what it deserves when it comes to exposure and publicity. A lot of our titles have been advertised by New York [T]imes Sunday Review. There's a fee involved, but it's worth it if you really want your message to be spread widely. Again, we're just waiting for your green light. I've been looking forward to work with you, but let me know either way.

(Am. Comp. Ex 1, Dkt. Entry No. 9-1, at 2.)[3]

Four days later, on December 15, 2014, Plaintiff signed a "Self-Publishing Services Agreement" (the "Contract," *see* Def. Mot. Ex. B, Dkt. Entry No. 22-3), that governed Plaintiff's purchase of certain publishing services from Xlibris called the "Platinum Service Package" (*see* Am. Compl. Ex. 1 at 3). The Platinum Service Package, which was marketed as the "Rolls-Royce of publishing," and included certain design and image, production, book marketing and other customizable features, was offered to Plaintiff at a 50% discount off of its normal price of $15,249. (Am. Comp. Ex. 1 at 3.) Plaintiff also signed two other documents on December 15: (i) an "Installment Payment Agreement," which expressly states that it is part of the Contract, and permitted Xlibris to charge Plaintiff's supplied credit card on certain dates (Def. Mot. Ex. B at 14);

---

[3] This email suggests that other communications had been exchanged between Plaintiff and Xlibris prior to formation of the contract, but this appears to be the only such communication that has been provided to the Court.

2

and (ii) a "Payment Information" sheet, which stated that Plaintiff would make an initial payment of $1,936.11, with a remaining balance of $5,718.39 to be paid in three monthly installments (Def. Mot Ex. B at 15).

The only provision of the Contract at issue in the present motion is "§ 15.3 MANDATORY ARBITRATION/CLASS ACTION WAIVER," which begins as follows:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ITS TERMINATION, OR THE VALIDITY OR BREACH THEREOF, SHALL BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN INDIANAPOLIS, INDIANA, UNDER AAA'S COMMERCIAL ARBITRATION RULES, AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE TRIBUNAL SHALL HAVE THE POWER TO RULE ON ANY CHALLENGE TO ITS OWN JURISDICTION OR TO THE VALIDITY OR ENFORCEABILITY OF ANY PORTION OF THE AGREEMENT TO ARBITRATE. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT THAT YOU MAY HAVE TO GO TO COURT OR TO HAVE A JURY TRIAL.

(Def. Mot Ex. B at 11). § 15.3 of the Contract also contained an "opt out" provision, which provided the following:

> You have the right to opt out of this provision which election would enable You to litigate disputes in a court before a Judge if You deliver to Us, within thirty (30) days of the effective date of this Agreement, an explicit instruction to opt out, hand signed and dated by You, via certified mail return receipt requested to Attn: Legal Dept, 1663 Liberty Drive, Bloomington, IN 47403. If We do not receive Your written notice within this time period, Your right to opt out will terminate and the provisions of this section shall apply.

(*Id.*)

Over the course of 2015, Plaintiff exchanged communications with Xlibris regarding Xlibris' alleged failure to comply with the terms of the Installment Payment agreement, including purported unauthorized charges to his credit card. (*See generally* Am. Comp. Ex. 1.) Plaintiff also complained that he had not received everything included in the Platinum Package, and that Xlibris

3

was attempting to charge him for additional books and services that he did not order. (*Id.*) Through the Amended Complaint, Plaintiff seeks damages for breach of contract, false advertising, tortious interference with a contract and violations of the Uniform Commercial Code ("UCC"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C. § 6101 *et seq.* and 16 C.F.R. § 310.1 *et seq.* (Am. Compl. at 2.)[4]

Defendants bring the present Motion to Compel arguing that § 15.3 of the Contract requires Plaintiff to arbitrate his claims and that Xlibris never received a written notice of Plaintiff's election to "opt out" of the arbitration provision. (*See generally* Mot. to Compel.) In opposition, Plaintiff concedes that he signed the Contract and does not dispute that he never sent written notice of an election to "opt out" of the arbitration provision. (Pl. Opp. at 3.) However, Plaintiff contends that: (i) the "opt out" provision was unfair, or (ii) he did, in fact, "opt out" by explaining he no longer wanted services offered by Xlibris. (*Id.*) Plaintiff also argues that Xlibris waived its right to arbitrate by failing to timely suggest arbitration after Plaintiff had notified Xlibris of his intent to file a complaint. (*Id.* at 3, 5.)[5]

## DISCUSSION

### I.  Legal Standard Under the Federal Arbitration Act (the "FAA")

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation

---

[4]     For purposes of assessing the scope of the claims Defendants move to arbitrate, the Court construes Plaintiff's claim for "deceptive advertising" as one for false advertising pursuant to N.Y. Gen. Bus. Law § 350-a and his claim for "contract tort" as one for tortious interference of a contract under New York common law. The Court dismisses Plaintiff's claim for "breach of peace" as not cognizable under either federal or New York law.

[5]     Plaintiff makes a number of other arguments in his opposition that may be relevant at an arbitration proceeding, but are not relevant to the assessment of Defendants' Motion to Compel.

and internal quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court has "repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration' and 'a liberal federal policy favoring arbitration agreements.'" *Id.* at 346 (citations omitted).

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). If the court is satisfied that such an agreement exists, the court must also consider (i) "the scope of that agreement"; (ii) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable"; and (iii) "if the court concludes that some, but not all, of the claims in the case are arbitrable, . . . whether to stay the balance of the proceedings pending arbitration." *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank. FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

"In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, — F.3d —, 2016 WL 4473225, at *4 (2d Cir. Aug. 25, 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard requires a court to consider all "relevant, admissible evidence submitted by the parties and contained in the pleadings," and other filings to the Court. *Nicosia*, 2016 WL 4473225, at *4 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 2016 WL 4473225, at *4.

5

**II.     Application**

   A.  <u>Plaintiff Consented to a Valid Arbitration Agreement.</u>

The FAA permits courts to deny enforcement of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Whether a valid arbitration agreement exists is a question to be determined by assessing applicable state contract law.  *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law.") (citations omitted); *see Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004) ("[W]hen determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'") (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).  "Under general contract principles a party is bound by the provisions of a contract that he signs unless he can show special circumstances that would relieve him of such an obligation."  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

Plaintiff here does not dispute that he agreed to the arbitration provision in the Contract, including the "opt out" clause, by signing the Contract.  (Pl. Opp. at 3 ("The Publishing Contract was signed 15 Dec. 2014; by the plaintiff.")).  Plaintiff also does not dispute that he never sent Xlibris written notice of an election to "opt out" of the arbitration provisions.  Instead, Plaintiff argues that because Defendants "waited until after 14 January 2015, at 2:55 pm to start work on the plaintiff's publishing service, which was 30 days after the plaintiff signed the contract," Plaintiff was given "no time to assess the work of defendant within the thirty day time period, to make determinations on using the opt-out option."  (*Id.*)  The crux of Plaintiff's argument,

6

therefore, is that, because the arbitration clause did not allow for sufficient time to assess Xlibris' performance before the "opt out" period expired, the arbitration clause is unfair, or unconscionable. As an alternative, Plaintiff argues that his election to "opt out" was effected when Plaintiff "explained that he did not want to participate in a service offered by the defendant, which is the same as opting out." (*Id.*)

The Contract in the instant case provides that it shall be "governed by and construed in accordance with the laws of the State of Indiana." (Contract § 15.2.) Unlike New York law, which generally requires a showing that "a contract is both procedurally and substantially unconscionable," *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010), in Indiana, "a contract may be substantively unconscionable, procedurally unconscionable, or both," *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 792 (7th Cir. 2013) (citing *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001)). "Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract." *DiMizio*, 756 N.E.2d at 1023. "[P]rocedural unconscionability issues arise from irregularities in the bargaining process or from characteristics peculiar to one of the parties." *Id.* at 1023-24. The Seventh Circuit Court of Appeals has observed that Indiana courts "do not regularly accept [unconscionability] as an argument" and the Seventh Circuit has "described Indiana as 'unfriendly' to unconscionability generally." *Jackson*, 711 F.3d at 792 (citing *Amoco Oil Co. v. Ashcraft*, 791 F.2d 519, 522-23 (7th Cir. 1986)).

Plaintiff has failed to establish the arbitration provision is either procedurally or substantively unconscionable. As an initial matter, having signed the Contract, Plaintiff is presumed to have read and understood its contents. *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp.2d 985, 998 (S.D. Ind. 2001) (". . . Indiana law presumes that a party has read and understood documents that he/she signs . . ."). That is particularly the case where, as here, the

provision is styled in capital letters in order to call attention to it. *See Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at *4 (N.D. Ind. Feb. 11, 2014). Plaintiff has not argued the bargaining process was unfair, and given the clear terms of the arbitration provision in the Contract, including an "opt out" provision that unambiguously stated the procedure through which Plaintiff could avoid having to arbitrate his claims, the Contract is not procedurally unconscionable. *See Tuttle* 2014 WL 545379 at *4 (citing *Jones v. Sallie Mae, Inc.*, 2013 WL 6283483, at *7 (M.D.Fla. Dec. 4, 2013) (presence of an "opt out" provision in a contract "vitiates any conceivable claim that the circumstances under which [the borrower] initially signed the Agreement were procedurally unfair.")); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 82-83 (S.D.N.Y. 2012) (arbitration clause containing a three-day "opt out" period was not procedurally unconscionable because it gave plaintiff "amply meaningful choice whether to bind himself to the Agreement") (internal quotation marks omitted).

Plaintiff's argument that the arbitration provision is substantively unconscionable also has no merit. The oppressiveness of substantive unconscionability is often found in this context where the consumer "is not in a position to shop around for better terms" as a result of unequal bargaining power. *DiMizio*, 756 N.E.2d at 1024 (quoting *Terry v. Ind. State Univ.*, 666 N.E.2d 87, 93 (Ind. Ct. App. 1996)). Plaintiff argues that the arbitration provision here is unfair because it does not provide Plaintiff with the opportunity to assess Xlibris' performance prior to opting out and that there is "very clear evidence of intent" to deny Plaintiff of that opportunity by breaching after thirty days. (Pl. Opp. at 3.) While it may be true that the "opt out" period had expired before Xlibris began performance on Plaintiff's manuscript, the Contract clearly separates the requirements through which Plaintiff was able to "opt out" of the arbitration provision from any provision dealing with Xlibris' performance under the Contract. Put another way, within thirty

8

days of signing the Contract, Plaintiff was required to take action to preserve his rights to file suit regardless of when or how egregiously Xlibris subsequently may have breached the agreement. Because Plaintiff was on notice of these terms and the Court finds them to be reasonable, Plaintiff's unfairness argument fails. *See Fischer v. Beazer Homes, Inc.*, 2011 WL 6092177, at *4 (S.D. Ind. Dec. 6, 2011) (finding no substantive unconscionability where there was "no evidence beyond the claimed unfairness").

For these reasons, Plaintiff's alternative argument that he "opted out" through a process other than that set forth in § 15.3 also fails. Because the arbitration clause clearly sets forth only one process through which Plaintiff could "opt out" of arbitration, and Plaintiff concedes that he did not follow that process, Plaintiff is bound by the arbitration provision.

B. Plaintiff's Claims Fall Within the Scope of the Arbitration Clause.

The arbitration clause of the contract encompasses "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, ITS TERMINATION OR THE VALIDITY OR BREACH THEREOF." (Def. Mot Ex. B at 11). The clause also states that "THE TRIBUNAL SHALL HAVE THE POWER TO RULE ON ANY CHALLENGE TO ITS OWN JURISDICTION OR TO THE VALIDITY OR ENFORCEABILITY OF ANY PORTION OF THE AGREEMENT TO ARBITRATE." (*Id.*) Defendants argue that the arbitration provision expressly grants the arbitration panel the authority to decide questions of arbitrability, and that, in any event, Plaintiff's claims fall within the scope of the arbitration clause. (Def. Mot. at 6-7, 9.) Plaintiff does not challenge Defendants' arguments on either of these points.

The Court agrees with Defendants that the heart of Plaintiff's allegations arise out of Xlibris' alleged failure to perform under the Contract, which clearly falls within the scope of this broad arbitration clause. *See JLM Indus., Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 172 (2d Cir. 2004)

(characterizing provisions that extend to "any" controversies or claims arising out of a contract as "broad," and extending to "collateral matters"). Plaintiff's remaining claims for false advertising, tortious interference with a contract and violations of the UCC, TCPA, and TCFAPA also fall within the scope of the arbitration agreement as they appear to relate to the alleged conduct of Defendants during the performance of the Contract. (*See* Am. Compl. at 2.)[6] Given the "federal policy requir[ing courts] to construe arbitration clauses as broadly as possible," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011), and that, in this case, Plaintiff "could not have suffered these damages . . . if [he] had not entered into" the Contract, *JLM Indus., Inc.*, 387 F.3d at 175, the Court finds that all of Plaintiff's claims should proceed to arbitration.

C. There Are No Non-Arbitrable Federal Claims

The next step in assessing a motion to compel arbitration is to determine whether any of Plaintiff's claims are federal claims that the FAA intended to be nonarbitrable. The FAA "requires courts to enforce agreements to arbitrate according to their terms," "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (internal quotation marks and citation omitted). "The burden is on the party opposing arbitration" to demonstrate that there exists such a contrary congressional command. *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

Here, Plaintiff has asserted federal claims arising under the TCPA and TCFAPA, but has not made any argument that these claims should be rendered non-arbitrable. With respect to

---

[6] This is true even of Plaintiff's claim for false advertising, which in other circumstances might occur prior to entering an agreement of this nature. In the Amended Complaint, Plaintiff ties his "Deceptive Advertising" claim to alleged extra credit card charges Xlibris made for services that were supposed to be part of the Platinum Package. (*See* Am. Compl. at 2 ("Also, discovered relating to the University Library Pitch Campaign, the previous payments were, which the Defendant charged the Plaintiff were covered in the first two months, and was to be apart of the Platinum Package, without extra cost. The conduct of the Defendant was a total act of Deceptive Advertising 47 U.S.C. Section 227 el seq.").)

10

Plaintiff's TCPA claims, courts in this Circuit have found no congressional intent to render such claims non-arbitrable. *Moore v. T-Mobile USA Inc.*, 548 F. App'x 686, 687 (2d Cir. 2013) (summary order) (affirming district court's order finding TCPA claims subject to mandatory arbitration); *Velez v. Credit One Bank*, 2016 WL 324963, at *7 (E.D.N.Y. Jan. 25, 2016) (citing *Salerno v. Credit One Bank, NA*, 2015 WL 6554977, at *6 (W.D.N.Y. Oct. 29, 2015) ("[T]he few courts that have considered the issue have found nothing in the text or legislative history of the TCPA to suggest that Congress intended TCPA claims to be non-arbitrable.")). The Court has researched the same with respect to TCFAPA, and has found no evidence of a clear congressional command suggesting TCFAPA claims should be rendered nonarbitrable. Therefore, the TCPA and TCFAPA claims shall proceed to arbitration.

D. <u>Defendants Did Not Waive Their Right To Arbitration.</u>

Plaintiff suggests Defendants have waived their right to arbitration because they "never suggested going through any arbitration process for resolution when they had thirty days to do so." (Pl. Opp. at 3.) Plaintiff further argues that: (i) Defendants "had every opportunity since March 2015 to suggest the arbitration process after several, emails and phone calls expressing dissatisfaction from the plaintiff; the defendant did not;" and (ii) "[a]rbitration was brought only after several months of plaintiff's efforts were ignored by the defendant." (Pl. Opp. at 5.) Plaintiff neither articulates a basis for his assertion that Defendants were required to demand arbitration within thirty days, nor offers a theory concerning when the thirty-day period might have started to run.

As an initial matter, the Second Circuit has recognized that "gateway matter[s]," including issues of waiver of the right to arbitrate, are procedural questions that are presumptively reserved for arbitrator. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("Both

waiver and estoppel generally fall into that latter group of issues presumptively for the arbitrator. The Supreme Court has stated, in dicta, that 'the presumption is that the arbitrator should decide 'allegation[s] of waiver.'"") (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Even if this were not so, the Court, having reviewed the Contract, finds no support for Plaintiff's arguments. First, the only deadline with respect to initiating arbitration that is contained in the Contract sets a limit of 180 days and applies only to Plaintiff, not Xlibris. (Def. Mot Ex. B at 11, § 15.1 ("You must file for Arbitration for damages arising directly or indirectly from this Agreement no later than one hundred eighty (180) days after any portion of Your claim has accrued.").) Second, while § 14.1 of the Contract permits liability should Xlibris fail to cure a specified breach after being notified of such breach, Plaintiff has not presented any evidence suggesting that he complied with the "Notices" requirements in § 16.2, as is necessary under § 14.1. (Def. Mot Ex. B at 10, § 14.1; *see Id.* at 12, § 16.2.)

Any argument that Defendants delayed unreasonably in filing their Motion to Compel once this litigation was commenced similarly is without merit as the Motion was filed early in the litigation and before any responsive pleading. Moreover, Plaintiff has not pointed to any prejudice caused by Defendants' purported delay. *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002) ("The key to a waiver analysis is prejudice. '[W]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.'") (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985)).

E. The Case Is Stayed.

This action is stayed pending the parties' arbitration of Plaintiff's claims. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir.), *cert. denied*, 136 S. Ct. 596 (2015). ("We join those Circuits

that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.")

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration is granted and this action is stayed pending resolution of the arbitration. The Clerk of the Court is directed to administratively close the case without prejudice to it being reopened upon the conclusion of the arbitration.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2016

/s/
DORA L. IRIZARRY
Chief Judge